

AO 102 (Rev. 01/09) Application for a Tracking Warrant

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

NOV 0 5 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

In the Matter of the Tracking of )
*(Identify the person to be tracked or describe* )
*the object or property to be used for tracking)* )
A BLUE FORD EXPEDITION, BEARING VIRGINIA )  Case No. 5:15mj00067
LICENSE PLATE NUMBER XHD1599, VEHICLE )
IDENTIFICATION NUMBER (VIN) 1FMRU15W62LA23777 )

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __21__ U.S.C. § __846__. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.
☐ The activity in this district relates to domestic or international terrorism.
☐ The person, property, or object is not now located in this district, but will be at the time of execution.
☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☑ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
Blue Ford Expedition, bearing Virginia license plate number XHD1599, VIN #1FMRU15W62LA23777;
2456 Martinsburg Pike, Stephenson, Virginia, 22656

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA/SAUSA:

AUSA Tyler McGaughey (EDVA)

_____
*Applicant's signature*

MICHAEL A. FERNALD  SA, ATF
*Applicant's printed name and title*

~~Sworn to before me and signed in my presence~~

Date: 11/5/15

_____
*Judge's signature*

City and state: Charlottesville, VA

Joel C. Hoppe, U.S. Magistrate Judge
*Printed name and title*

Received by reliable electronic means and sworn and attested to by telephone.

SEALED

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA

Harrisonburg Division

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF A BLUE FORD EXPEDITION, VIRGINIA LICENSE PLATE NUMBER XHD1599, VIN # 1FMRU15W62LA23777 | Case No. 5:15mj00067<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Michael A. Fernald, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device on a blue, 2002, Ford Expedition, bearing Virginia license plate number XHD1599, and vehicle identification number (VIN) 1FMRU15W62LA23777 ("the SUBJECT VEHICLE"). Based on the facts set forth in this affidavit, I believe that the SUBJECT VEHICLE is presently being used to engage in illegal conduct, including distribution and conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and unlawful possession and distribution of firearms, in violation of 18 U.S.C. §§ 922(d), 922(g), and 924(c), and that there is probable cause to believe that the installation of a tracking device on the SUBJECT VEHICLE and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2. I have been a Special Agent with the ATF since 2014, and a sworn law enforcement officer for over twelve years. I am currently assigned to the ATF Washington Field Division, Falls Church II office, located in Northern Virginia. As an ATF Special Agent, I have investigated and assisted in the investigation of firearms and narcotics traffickers. From experience and training, I have learned that firearms and narcotics traffickers frequently hold meetings or conduct business in their vehicle or those of trusted associates because they believe that the vehicle's mobility and limited size promote the security and privacy of their activities and conversations. I also know through training and experience that firearms and narcotics traffickers frequently move from place to place to pick up firearms and narcotics from their sources of supply, deliver firearms and narcotics to their customers, pick up firearms and narcotics trafficking proceeds from their customers, and deliver the proceeds to their sources of supply, using varying vehicles, methods, locations, and routes, to avoid detection by law enforcement authorities conducting surveillance and to avoid the identification through their travel and interactions of their sources of supply and customers.

3. The facts in this affidavit come from my personal observations, interviews with suspects, my training and experience, and information obtained from other agents and witnesses. This affidavit contains the information necessary to establish probable cause but it does not include each and every fact known by me or the government.

## OVERVIEW OF INVESTIGATION

4. In April 2015, at the request of the Manassas Park Police Department, ATF opened an investigation targeting drug and firearms distributors in and around Manassas, Virginia. The investigation has identified Maria del CARMEN FLORES (a/k/a "VIEJA" or "CORINA") as a distributor of drugs and firearms operating in the Manassas area. From July

2

2015 to the present, ATF has used confidential informants to make nine controlled buys from CARMEN FLORES, purchasing a total of approximately ten-and-a-half (10½) ounces of cocaine, and multiple firearms, including a .380 caliber semi-automatic handgun, a 9mm caliber semi-automatic handgun, a .22 caliber revolver, a long-barreled rifle, and a sawed-off 12-gauge shotgun. Other than one occasion where CARMEN FLORES used a runner to deliver cocaine, CARMEN FLORES has arrived at the meeting location for each of the controlled buys driving the SUBJECT VEHICLE.

## PROBABLE CAUSE

5. In April 2015, ATF began using CS-1 to identify and make controlled purchases from drug and firearms distributors in the Manassas area. CS-1 is cooperating with law enforcement in exchange for consideration with potential immigration issues. Agents have corroborated and verified the information provided by CS-1 through a variety of investigative methods, including physical and video surveillance, controlled purchases, and recorded phone calls. I, therefore, consider CS-1 to be reliable. For the purposes of this affidavit, CS-1 will be referred to in the masculine gender regardless of whether CS-1 is in fact male or female.

6. In June 2015, an acquaintance of CS-1 provided him with the telephone number of a cocaine dealer known as "VIEJA." Shortly thereafter, on June 23, 2015, CS-1, acting under the supervision and direction of law enforcement, made a recorded phone call to VIEJA and requested a quantity of cocaine. VIEJA told CS-1 that she was currently out of drugs, and that she was waiting for a drug shipment to arrive from her source of supply. VIEJA said that she ordinarily receives drug shipments every two weeks.

7. On July 15, 2015, CS-1, acting under the supervision and direction of law enforcement, made a recorded phone call to VIEJA and requested one ounce of cocaine. VIEJA

3

agreed to meet CS-1 later that evening at the Video Mexico Lindo Market, located in Manassas, Virginia. Prior to the meeting, agents searched CS-1 and found no contraband. They also placed a recording device inside CS-1's vehicle and gave him $1,500 to conduct the transaction. VIEJA arrived at the convenience store at approximately 7:20 p.m., driving the SUBJECT VEHICLE. At approximately 7:26 p.m., surveillance units observed VIEJA enter the front passenger seat of CS-1's vehicle. Once VIEJA was inside CS-1's vehicle, video surveillance shows that VIEJA removed a plastic bag containing a white powdery substance from her clothing, and placed the plastic bag in the center console cup holder. After VIEJA placed the plastic bag in the cup holder, CS-1 paid $1,200 to VIEJA. After the transaction was completed, CS-1 met with agents and provided them with approximately one (1) ounce of a substance that subsequently tested positive for cocaine.

8. Following the transaction, ATF agents checked DMV records and learned that the SUBJECT VEHICLE was registered to Mayra M. Molina Beltran, at 2456 Martinsburg Pike, Stephenson, Virginia, 22656. After reviewing a DMV photograph of Molina Beltran, agents determined that she was too young to be VIEJA. A database check on the Stephenson address provided a possible identity for VIEJA as Maria del CARMEN FLORES. A DMV photograph of CARMEN FLORES was shown to CS-1, who positively identified CARMEN FLORES as VIEJA. In addition, ATF agents compared booking photographs from prior arrests of CARMEN FLORES to the video footage of VIEJA from the transaction on July 15, 2015, and they appeared to be the same person.

9. On July 30, 2015, CS-1, acting under the supervision and direction of law enforcement, made a phone call to CARMEN FLORES and requested approximately two (2) ounces of cocaine. They agreed to meet later that day at the Video Mexico Lindo Market in

4

Manassas. Prior to the transaction taking place, CARMEN FLORES called CS-1 and told him that a "runner" would deliver the cocaine on her behalf. Shortly before the transaction, agents searched CS-1 and found no contraband. They installed a surveillance camera inside CS-1's vehicle, and gave him $2,400 to conduct the transaction. CS-1 arrived at the meet location at approximately 7:10 p.m. About a half-hour later, at approximately 7:44 p.m., surveillance units observed a black Nissan SUV bearing Virginia license plate VFB-9673 arrive in the rear parking lot of the convenience store. The vehicle was being driven by a female (later identified as Mayra M. Molina Beltran, the registered owner of the SUBJECT VEHICLE). The female left her vehicle and entered the front passenger side of CS-1's vehicle. Once the female was inside CS-1's vehicle, CS-1 gave her $2,400, and she gave him a plastic shopping bag. CS-1 verified that the shopping bag contained a substance that looked like cocaine. Following the transaction, CS-1 met with agents and provided them with two (2) ounces of a substance that subsequently tested positive for cocaine.

10. On August 5, 2015, CS-1, acting under the supervision and direction of law enforcement, made a phone call to CARMEN FLORES and ordered two ounces of cocaine. They agreed to meet the following day, on August 6, at the Video Mexico Lindo Market in Manassas. Prior to the meeting, law enforcement agents searched CS-1 and found no contraband. They also placed a recording device inside CS-1's vehicle and gave him $2,400 to conduct the transaction. CARMEN arrived at the Video Mexico Lindo Market driving the SUBJECT VEHICLE. After she arrived, CARMEN FLORES entered the front passenger seat of CS-1's vehicle. Once inside the vehicle, surveillance video shows that CARMEN FLORES removed a plastic bag containing a white powdery substance from within her clothing and placed the item in the center console cup holder. CS-1 then provided CARMEN FLORES with $2,400,

which she counted and then placed inside her clothing. Following the transaction, CS-1 returned to the agents and provided them with approximately two (2) ounces of a substance that tested positive for cocaine.

11. During the transaction on August 6, 2015, CS-1 asked CARMEN FLORES if she had any contacts that could provide firearms. CARMEN FLORES told CS-1 that she could get anything, including grenades and explosives. CS-1 asked if CARMEN FLORES could obtain an "AK rifle." CARMEN FLORES said that her cousin had firearms and that she would call him and find out.

12. On August 17, 2015, CS-1, acting under the supervision and direction of law enforcement, made a recorded call to CARMEN FLORES. CS-1 identified himself and inquired about the firearms that CARMEN FLORES was going to obtain from her cousin. CARMEN FLORES told CS-1 that her cousin did not have any firearms at the moment, but he might have some the following week. Between August 19 and August 31, 2015, CS-1, acting under the supervision and direction of law enforcement, made five recorded calls to CARMEN FLORES regarding firearms and narcotics.

13. In or around July 2015, ATF began using another confidential informant, referred to herein as "CS-2," to make controlled purchases of drugs and firearms from distributors in the Manassas area. CS-2 is cooperating with law enforcement for money and consideration regarding potential immigration issues. Agents have corroborated and verified the information provided by CS-2 through a variety of investigative methods, including physical and video surveillance, controlled purchases, recorded telephone calls. I, therefore, consider CS-2 to be reliable. For the purposes of this affidavit, CS-2 will be referred to in the masculine gender regardless of whether CS-2 is in fact male or female.

6

14. On September 16, 2015, CS-2, acting under the supervision and direction of law enforcement, made a phone call to "CORINA" at the same telephone number used by "VIEJA." During the call, CS-2 requested approximately one-half (1/2) ounce of cocaine. CORINA agreed to meet later that day at Guapo's Restaurant, in Manassas Park, Virginia. Prior to the meeting, agents searched CS-2 and found no contraband. They also placed a recording device inside CS-2's vehicle and gave him $1,100 to conduct the transaction. At approximately 8:28 p.m., CORINA arrived at Guapo's Restaurant driving the SUBJECT VEHICLE, and surveillance units positively identified CORINA as CARMEN FLORES. After arriving at Guapo's Restaurant, video surveillance shows that CARMEN FLORES entered the front passenger side of CS-2's vehicle. She removed suspected cocaine from her clothing and placed it in the center console cup holder. CS-2 then provided CARMEN FLORES with $650, which she counted and then placed inside her clothing. After the transaction, CS-2 met with agents and provided them with approximately one-half (1/2) ounce of a substance that subsequently tested positive for cocaine.

15. On October 6, 2015, CS-1, acting under the supervision and direction of law enforcement, made a recorded call to CARMEN FLORES and requested a quantity of cocaine. CARMEN FLORES agreed to meet CS-1 later that day at the Sheetz Gas Station in Manassas Park, Virginia. Prior to the meeting, law enforcement agents searched CS-1 and found no contraband. They also placed a recording device inside CS-1's vehicle and gave him $1,200 to conduct the transaction. CS-1 arrived at the gas station at approximately 6:10 p.m. After CS-1 arrived, CARMEN FLORES got out of the SUBJECT VEHICLE. Video surveillance shows that CARMEN FLORES entered the front passenger side of CS-1's vehicle. She removed suspected cocaine from her clothing and placed it in the center console cup holder. CS-1 then provided CARMEN FLORES with $1,200, which she counted and kept in her hand. During the

7

transaction, CS-1 asked CARMEN FLORES about purchasing a firearm, and CARMEN FLORES told CS-1 that she would sell him a firearm at their next transaction. After the transaction, CS-1 returned to the agents and provided approximately one (1) ounce of a substance that tested positive for cocaine.

16. On October 13, 2015, at around 12:10 p.m., CS-1 received a telephone call from CARMEN FLORES. She reported that she was out of cocaine and waiting for her next shipment. After CS-1 complained that CARMEN FLORES was difficult to deal with, CARMEN FLORES explained to CS-1 that she had customers all over Manassas and that one of her customers purchased six ounces of cocaine per week. She further told CS-1 that her source of supply was currently in Mexico, and that he was scheduled to return on October 26. Later that day, at around 3:23 p.m., CS-1, acting under the supervision and direction of law enforcement, made a recorded call to CARMEN FLORES and told her that he wanted to purchase a .22 caliber revolver and a rifle. They agreed to meet at the Sheetz gas station in Manassas Park, Virginia, to complete the transaction. Prior to the meeting, agents searched CS-1 and found no contraband. They also placed a recording device inside CS-1's vehicle and gave him $1,250 to conduct the transaction. Prior to the transaction, CARMEN FLORES moved the meeting location to the parking lot at Bowl America, in Manassas, Virginia. After CS-1 arrived at Bowl America, CARMEN FLORES got out of the SUBJECT VEHICLE and entered the front passenger side of CS-1's vehicle. Once inside CS-1's vehicle, video surveillance shows that she removed a .22 caliber revolver (loaded with five rounds of ammunition) and a box of .22 caliber ammunition from her purse and placed it in the center console cup holder. She also produced a magazine and ammunition for a rifle. She then exited CS-1's vehicle and returned with a rifle wrapped in a blanket. CS-1 then provided CARMEN FLORES with $1,050, which she counted and placed in

8

her clothing. After the transaction, CS-1 returned to the agents and provided them with the firearms and ammunition.

17. On October 26, 2015, CS-1, acting under the supervision and direction of law enforcement, made a recorded call to CARMEN FLORES and negotiated the purchase of cocaine and a shotgun. They agreed to meet at Bowl America, in Manassas, Virginia, later that day. Prior to the meeting, law enforcement agents searched CS-1 and found no contraband. They also placed a recording device inside CS-1's vehicle and gave him $2,700 to conduct the transaction. CS-1 arrived at the meet location at approximately 6:32 p.m. CARMEN FLORES was parked in front of the bowling alley in the SUBJECT VEHICLE. After CS-1 arrived, video surveillance shows that CARMEN FLORES placed an object wrapped in a blanket on the rear passenger seat of CS-1's vehicle, and sat in the front passenger seat. She then proceeded to place a bag with white powdery substance into the center console cup holder. CS-1 handed $2,700 to CARMEN FLORES, which she counted and placed in her clothing. After the transaction, CS-1 returned to agents and gave them approximately two ounces of a substance that subsequently tested positive for cocaine, two 12-gauge shotgun rounds of ammunition, and a shotgun with no serial number and a shortened barrel.

18. The following day, on October 27, 2015, CS-1 made another controlled buy from CARMEN FLORES in Manassas, purchasing a .380 caliber semi-automatic handgun, 5 rounds of .380 caliber ammunition, two (2) magazines, and one (1) ounce of cocaine. Three days later, on October 30, 2015, CS-1 made a controlled buy from CARMEN FLORES in Manassas, purchasing a 9mm semi-automatic handgun, 50 rounds of 9mm ammunition, and one (1) ounce of cocaine. CARMEN FLORES arrived at both of these controlled buys driving the SUBJECT VEHICLE.

9

19. Based on law enforcement and other database checks, I have probable cause to believe that CARMEN FLORES resides at 2456 Martinsburg Pike, Stephenson, Virginia, 22656, within the Western District of Virginia, and based on physical surveillance performed by ATF agent(s), I know that the SUBJECT VEHICLE is often parked outside of the residence at that address at all hours of the day and night.

20. In order to track the movement of the SUBJECT VEHICLE effectively and to decrease the chance of detection, I seek authorization to place a tracking device on the SUBJECT VEHICLE while it is in the Western District of Virginia. Because the owner sometimes parks the SUBJECT VEHICLE in driveways and on other private property, it may be necessary to enter onto private property and/or move the SUBJECT VEHICLE to effect the installation, repair, replacement, and removal of the tracking device. Specifically, I seek authorization to enter onto the property at 2456 Martinsburg Pike, Stephenson, Virginia, 22656. The SUBJECT VEHICLE is registered to that address, and ATF has observed the SUBJECT VEHICLE at that address at all hours of the day and night.

21. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is further requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours. Because CARMEN FLORES' residence is located in a rural area, it is highly likely that CARMEN FLORES and other targets of the investigation would notice the approach of unknown vehicles and any attempt to install the tracking device on the SUBJECT VEHICLE during the daytime hours. Installation of a tracking device, therefore, is only feasible when the SUBJECT VEHICLE is parked outside of the residence during nighttime hours.

22. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of 45 days following installation of the device. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

23. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of the ATF, DEA, and HSI, or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the SUBJECT VEHICLE while it is located in the Western District of Virginia within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the SUBJECT VEHICLE after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter 2456 Martinsburg Pike, Stephenson, Virginia, 22656, and/or move the SUBJECT VEHICLE to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Western District of Virginia.

24. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an

adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

25. I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the ATF, DEA and HSI, and other federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. Sealing these documents will also better ensure the safety of agents and others.

_____
Michael A. Fernald
Special Agent
ATF

~~Sworn and subscribed to before me this xxxxxx day of November, 2015.~~
Received by reliable electronic means and sworn and attested to by telephone on November 5, 2015.

_____
The Honorable
United States Magistrate Judge

12